UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL BIRD, DARRIUS WILLIAMS,
and DONTAE TRAVIER, on behalf of
themselves and all similarly situated
employees,

        Plaintiffs,

v.                                  Case No. 1:19-CV-442

WLP EXECUTIVE PROTECTION GROUP,      HON. GORDON J. QUIST
LLC, RON WARE, JAMES PITTS, and
JEFFREY LILLARD,

        Defendants.
_____/

## OPINION

Plaintiffs, Michael Bird, Darrius Williams, and Dontae Travier, on behalf of themselves and all similarly situated employees, initiated this action against Defendants, WLP Executive Protection Group, LLC, Ron Ware, James Pitts, and Jeffrey Lillard, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). Plaintiffs allege that Defendants failed to pay overtime compensation and maintain required records in violation of the FLSA. Plaintiffs have moved for conditional certification and court authorized notice pursuant to 29 U.S.C. § 216(b). (ECF No. 6.) In response, Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that Plaintiffs are not covered by the FLSA. (ECF No. 16.) For the reasons stated below, Defendants' motion for summary judgment will be granted and Plaintiffs' motion for conditional certification will be denied.

## I. BACKGROUND

WLP Executive Protection Group, LLC is a Michigan corporation that provides security guards and related services to businesses and public festivals in Kalamazoo and the surrounding areas.  The individual defendants—Ron Ware, James Pitts, and Jeffrey Lillard—are co-owners of WLP.

Plaintiffs, Michael Bird, Darrius Williams, and Dontae Travier, and Opt-in Plaintiff, Michael Wilson, all worked for WLP as hourly security guards.[1]  Bird started in December 2015. Travier started in February 2017.  Williams started in July 2018.  Wilson started in March 2019. Plaintiffs primarily worked at the Kalamazoo Family Health Center.  They also worked at the Kalamazoo State Theatre, Kellogg Arena, and various state festivals.  In their motion for conditional certification, Plaintiffs described their job duties as "typically . . . securing entrances, monitoring equipment and other property, providing stage security, restricting access to secured areas, general crowd control, and providing an overall safe environment." (ECF No. 6-2 at PageID.64; ECF No. 6-3 at PageID.68; ECF No. 6-4 at PageID.71; ECF No. 6-5 at PageID.74.)

In their summary judgment response, Plaintiffs added additional details regarding their job duties.  At the Kalamazoo Family Health Center, Plaintiffs primarily worked at the Alcott, Paterson, and Burdick Campuses.  The Alcott and Paterson Campuses have on-site pharmacies, where individuals can purchase prescription or over-the-counter medicine.  Plaintiffs allege that they "guarded the buildings to prevent trespassing and theft of property and various goods that were temporarily stored on the premises" and "guarded interstate deliveries and shipments of pharmaceuticals, medical supplies, patient medical records, hazardous waste, and other goods

---

[1] Bird also worked as a supervisor for a short period of time. As a supervisor, his job duties "included driving security guards to different locations, collecting timesheets, delivering paychecks, attending mandatory unpaid meetings on Sundays, and also working as a security guard at various locations." (ECF No. 6-2 at PageID.65.)

multiple times per day." (ECF No. 23-1 at PageID.179; ECF No. 23-2 at PageID.182; ECF No. 23-3 at PageID.184.) Plaintiffs also "often assisted with loading and unloading shipments and deliveries to and from other states." (ECF No. 23-1 at PageID.179; ECF No. 23-2 at PageID.182; ECF No. 23-3 at PageID.184.) When Plaintiffs worked at festivals in Michigan, they "guarded out-of-state patrons and assisted with the collection and guarding of cash[.]" (ECF No. 23-1 at PageID.179; ECF No. 23-2 at PageID.182; ECF No. 23-3 at PageID.184.) Finally, when Plaintiffs worked at the Kalamazoo State Theatre or Kellogg Arena, they guarded out-of-state patrons and performers, and vehicles and equipment that came from outside the state.

Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of "[a]ll current and former hourly employees who worked for Defendants at any time during the last three years." (ECF No. 1 at PageID.9.) In the two-count Complaint, Plaintiffs allege that Defendants manipulated pay records so it would appear that employees worked fewer hours in a workweek than they actually did in order to avoid paying overtime.

## II. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006). While the Court must view the evidence in the light most

favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813–14 (6th Cir. 2006).

### III. ANALYSIS

Defendants argue that they are entitled to summary judgment because Plaintiffs are not covered by the FLSA. Under the FLSA, an employer must pay its employee overtime compensation of one and one-half times his or her regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a). But in order to establish a claim for overtime compensation, the employee must first demonstrate that he or she is covered through either enterprise coverage or individual coverage. "Plaintiff bears the burden to establish that his employment is covered by the FLSA through either type of coverage." *Palacio v. Woodland Turf Sports Ctr., Inc.*, No. 1:16-cv-169, 2017 WL 4276867, at *2 (W.D. Mich. Sept. 27, 2017) (citing *Mendoza v. Detail Sols., LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012)); *see also Sobrinio v. Medical Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) ("It is [the employee's] burden to prove that the FLSA applies to him."); *Dimingo v. Midnight Xpress, Inc.*, 325 F. Supp. 3d 1299, 1309 (S.D. Fla. 2018) ("The burden is on the plaintiff-employee to demonstrate that individual coverage applies.").

### A. Enterprise Coverage

To qualify for enterprise coverage, an employee must show that the employer (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (2) "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).  The Court agrees with Defendants that enterprise coverage does not, and will not, apply in this case.  Defendants have provided evidence that WLP never had gross sales over $500,000 during the relevant time period. (ECF No. 17-1 at PageID.141; ECF No. 24-1 at PageID.200-201.)  Moreover, no additional discovery could show that WLP had gross sales over $500,000.

### B. Individual Coverage

To qualify for individual coverage, an employee must show that he or she "is engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. § 207(a)(1).  Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  "[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v All Restoration Serv., Inc.*, 448 F3d 1264, 1266 (11th Cir. 2006).  The Court "must look to the character of the employee's activities, rather than to those of his employer."  *Mitchell v. Central Produce Co.*, 239 F.2d 377, 378 (6th Cir. 1956); *see also Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211, 79 S.

Ct. 260, 264 (1959) ("[W]e focus on the activities of the employees and not on the business of the employer."). "The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429, 75 S. Ct. 860, 862 (1955).

In the instant case, each Plaintiff worked as a security guard. Courts have reached different outcomes when determining whether a security guard meets the individual coverage standard. *Compare Sobrinio v. Medical Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (holding that the plaintiff, who worked as a janitor, security guard and driver, was not "engaged in commerce" because driving motel guests to and from the medical center and local stores was purely local), *and Rivera v Deer Run Realty & Mgmt., Inc*, No. 6:15-CV-79-ORL-41DAB, 2015 WL 4878681 at *7 (M.D. Fla. Aug. 14, 2015) (finding that "security guard services wholly within the state of Florida have generally been held to be local in nature and outside the coverage of the FLSA."), *and Velasquez v. All Florida Sec. Corp.*, No. 07–23159–CIV, 2008 WL 5232916 (S.D. Fla. Dec. 15, 2008) (holding that the plaintiff security guard was outside the coverage of the FLSA because he was employed by a local company providing security guards to local businesses), *with Russell Co. v. McComb*, 187 F.2d 524, 526 (5th Cir. 1951) (holding that the sole night watchman responsible for overseeing the entire premises and property of a wholesale grocery business was covered by the FLSA because he was engaged in "production of goods for commerce"), *and Paniagua v. Picasso Tower, Inc.*, 2009 WL 4895125, at *1 (S.D. Fla. Dec. 11, 2009) (ruling that whether the plaintiff security guard is covered under the FLSA is a jury question).

The only binding precedent for this Court on this issue is *Mitchell v. Central Produce Co.*, 239 F.2d 377 (6th Cir. 1956). In that case, the Sixth Circuit held that the night watchman fell within

the coverage of the FLSA.  *Id.* at 379.  There, the plaintiff was employed as a night watchman at a fruit and vegetable distribution business.  *Id.* at 378–79.  The business had significant out-of-state connections—it received 90% of its produce from out of state and 10% of its annual sales were to out-of-state customers.  *Id.* at 377.  As a night watchman, the plaintiff's primary duty was "to be on the lookout for fires" but he also played an important role in receiving and distributing interstate produce.  *Id.* at 378. Because he was the only employee on duty at night, the plaintiff was responsible for unlocking the refrigerated rooms when a new shipment arrived.  *Id.*  The plaintiff was also responsible for letting the truck drivers into his office to pick up or drop off truck keys and necessary paperwork before leaving for or coming back from an out-of-state delivery. *Id.*  In holding that the plaintiff fell within the coverage of the FLSA, the Sixth Circuit focused on the plaintiff's duties as a watchman as "[e]ach case is necessarily controlled by its particular facts." *Id.* at 379.  The Sixth Circuit also distinguished the case from other cases that "involve[d] employees who deal with the goods after they have come to rest in the warehouse." *Id.*

In the instant case, the Court finds that the WLP's hourly security guards do not meet the individual coverage standard because their job duties remained local in nature.  Plaintiffs worked solely in the State of Michigan—mostly in Kalamazoo County.  Although some Plaintiffs provided security at local festivals, these duties were not on a regular and recurring basis.  Plaintiffs "primarily" and "spent the vast majority of time" at the Kalamazoo Family Health Center. They did not guard actual instrumentalities of interstate commerce.  Nor were they involved in the production of goods that were to be sold in interstate commerce.  Plaintiffs primarily provided security to a health center, which provides services to local residents.  In the Court's view, the allegation that they assisted in loading and unloading various shipments is not enough to bring them within the scope of individual coverage.

In addition, Plaintiffs' job duties are easily distinguishable from the plaintiff in *Mitchell*. Here, Plaintiffs are not employed by a distribution center; instead, they are employed by a local security firm without significant out-of-state connections.  They did not have a significant role in receiving and distributing interstate produce.  They were not the only employees working at the distribution center at night. Instead, the facts in the instant case are more closely aligned with the cases in which courts found that security guards were not covered by the FSLA.  *See Sobrinio v. Medical Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828 (5th Cir. 2007); *Rivera v Deer Run Realty & Mgmt., Inc*, No. 6:15-CV-79-ORL-41DAB, 2015 WL 4878681 (M.D. Fla. Aug. 14, 2015).

Plaintiffs make two additional arguments that must be addressed.  First, Plaintiffs complain that Defendants' summary judgment motion is premature because they have not had the opportunity to engage in discovery. Rule 56(d) requires the nonmovant to show that it cannot present facts essential to justify its opposition by "affidavit or declaration."  In the instant case, Plaintiffs' declarations do not mention any facts that they are unable to present because they were unable to obtain the necessary evidence. More importantly, the issue in this case concerns the scope of Plaintiffs' job duties. Plaintiffs should be aware of their own job duties. And Plaintiffs describe their job duties in their declaration.  The Court has accepted all of the assertions in the declaration as true. As stated in Plaintiffs' brief, "[t]he averments contained in Plaintiffs' declarations will be further confirmed and corroborated through discovery by way of documents and witness testimony." (ECF No. 23 at PageID.166.)  Because discovery will just confirm and corroborate Plaintiffs' declarations, the Court finds that further discovery is unnecessary.

Plaintiffs also argue that they spent "the vast majority of time" working at a FSLA covered entity—Kalamazoo Health Care Center. Plaintiffs were not employed by the covered entity and they are not suing the covered entity now.  Plaintiffs have not adequately explained how this

8

relevant to whether individual coverage applies in this case.  *See Steimel v Conway Prowash, LLC*, No. 1:15-CV-599, 2016 WL 7616509 at *3 (W.D. Mich. May 31, 2016) ("Employees are not engaged in commerce when they provide general services through a contract at facilities where interstate commerce activities occur.").

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion for summary judgment.  Because the Court will grant Defendants' motion for summary judgment, Plaintiffs' motion for conditional certification and court authorized notice pursuant to 29 U.S.C. § 216(b) is rendered moot.

An order consistent with this opinion will enter.


Dated: May 21, 2020                                   /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE